UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED
U.S. DISTRICT COURT

2013 OCT 31  PM 4: 15

S.D. OF N.Y.W.C.

------------------------------------------------------------------------------X

THE WESTCHESTER COUNTY INDEPENDENCE PARTY,
RICHARD RHOADES, IRMA Y. DRACE, DHYALMA N.
VAZQUEZ, SAM ZHERKA AND DR. GIULIO CAVALLO,

Plaintiffs,

-against-

13 CV 7737

ROBERT P. ASTORINO,
ROBERT A. ASTORINO,
DOUGLAS A. COLETY,
KEVIN J. PLUNKETT,
DANIEL L. PAGANO,
GUY PARISI,
WESTCHESTER COUNTY BOARD OF ELECTIONS
WESTCHESTER COUNTY REPUBLICAN PARTY
MORGAN D. ABDELNOUR,
DOUGLAS F. ABDELNOUR,
ROBERT G. ALBERTY,
ELISABETH ALBERTY,
CHRISTOPHER R. ARNOLD,
RALPH J. BERARDI, JR.,
NICOLINA BOMMARITO,
FRANCESCA K. BOSSEY,
DANIEL BRANDA,
LISA BURKE,
MARY L. CAPOCCIA,
NATASHA C. CAPUTO,
CHRISTOPHER S. CAPUTO,
THOMAS P. CASPER,
JAMES F. CASTRO-BLANCO,
JOHN A. CERINO,
THEODORA CERINO,
SUNNY K. CHACKO,
JAMES R. COLEMAN,
KATHARINE WILSON CONROY,
DIANA COSTELLO,
JOHNNA CULLIGAN,
JOSEPH DALLI,
CARMEN DALLI,
NICHOLAS S. DECICCO,
MARICELLY VELEZ-DELGADO,
ROBERT DELGADO,

JUDGE KARAS

1

PETER DELUCIA,
CHARLES P. DUFFY,
JESSICA R. EGAN,
ANTHONY F. FERRIELLO,
JAMES C. FREEMAN,
BRIAN P. FURLONG,
MARTIN FINNERAN,
DAVID B. GELFARB,
GERARD R. GERSHONOWITZ,
DEBORAH GERACE,
PHILIPPE M. GILLE,
LEIGH A. GIROUX,
STEPHANIE H. GIROUX,
JUDITH HRADSKY,
LINDSAY ANN JACKSON,
JOSEPH D. KENNER,
CHARLES A. KING,
PATRICIA E. LEAVY,
GERARD LONGARZO, JR.,
MARY JENNINGS MAHON,
JOSEPH CHARLES MARCHESE III,
SHEILA MARCOTTE,
JAMES MAISANO,
LUCIANA MASTROGIACOMO,
GREGORY G. McBRIDE,
JOHN B. McCAFFREY,
MATTHEW J. McCARRICK,
JEANINE P. McCARRICK,
DIANA McCAUGHEY,
FELICIA McCLOSKEY,
PHILOMENA M. McCLOSKEY,
EDWIN J. McCORMACK,
EVELYN M. McCORMACK,
ROSEMARY A. McGLAUGHLIN,
ROBERT F. MEEHAN,
EILEEN MARY MILDENBERGER,
AMANDA MODUGNO,
JANICE P. MODUGNO,
ANTHONY MODUGNO
MICHAEL ANTHONY MONTELEONE,
WILLIAM M. MOONEY, III,
KIMBERLY HP MORELLA,
KAREN ANN MURPHY,
DIANE M. NARDI,
HENRY C. NEUBECK,
DEBORAH S. OGDEN,

GEORGE OROS,
CHRISTINA A. OROS,
IRIS THERESA PAGAN,
ANTHONY PILLA,
KATHRYN C. PLUNKETT,
DAVID P. POLIZZI,
MICHAEL RECCA,
THOMAS M. REDDY,
ANDREA C. RENDO,
VICTORIA ROACH,
ADAM RODRIQUEZ,
ELENA FORTUNA ROGLIANO,
ADELAIDE ROGLIANO,
ANTONIO ROGLIANO,
CHRISTINE ANN RUIS,
DONALD B. SCOTT,
STEPHANIE T. SCOTT,
CHRISTINE A. SCULTI,
MARGARET M. SCULTI,
YUZETH M. SMITH,
GLEN P. SOLIMINE,
BERNICE SPRECKMAN,
ARTHUR R. SULLIVAN, JR.,
JOHN G. TESTA,
ANTHONY J. TRIPODI,
YOLANDA VALENCIA,
YU FLORA WU-BIAGI,
BRITTA VANDER LINDEN,
LUCAS A. VANDER LINDEN,
JOHN VERNI,
ALBERTO F. VILLATE,
LESLIE J. WINDSOR,
HOLLY C. YOUNG,
EDWARD A. ZEBZDA.

                                                    Defendants
--------------------------------------------------------------------------------X

## COMPLAINT

Plaintiffs by and through their respective counsel allege against Defendants as follows:

## INTRODUCTION

This is a civil action brought pursuant to 18 U.S.C. 1961 et seq; for actual, treble,

consequential and exemplary damages; for all other relief which this Honorable Court deems just

3

and proper under all circumstances which have occasioned this Complaint. See 18 U.S.C. §1964(b) and (c) ("Civil RICO").

In sum, upon information and belief, the Defendants, acting together with Defendants Robert Astorino, coordinated a party raid of the Westchester County Independence Party by a coordinated effort to unlawfully enroll Westchester Republican Party members, and others, in the Westchester County Independence Party in order to control the outcome of the Election for Westchester County Executive and future elections. Therefore, the primary cause of this action is a widespread criminal enterprise engaged in a pattern of racketeering activity across state lines, and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts during the past three (3) calendar years including mail and wire fraud.

Upon information and belief, the primary objective of the racketeering enterprise has been to raid the Westchester Independence Party thereby illegally corrupting the election process and rigging and controlling the outcome of Independence Party Primary Election for September 10, 2013 and primaries going forward by using calculated methods that will be fully discussed herein. Upon information and belief, the organized fraudulent scheme by all Co-Conspirator Defendants and others to change their party enrollment to the Independence Party included, but not limited to the following methods:

- backdating voter registration applications so that Defendants can qualify to vote;

- becoming notaries to execute fraudulent petitions;

- allowing the filing of petitions after the filing time frame as allowed by law; etc.

Even more telling of Defendants' conspiracy to raid the Independence Party is that each and every Co-Conspirator Defendant and others are connected, in some way, to Republican County Executive Robert Astorino and the Westchester Republican Party. Therefore, Defendants'

actions, more fully discussed herein, were done in order to take over the Independence Party so as to make it a clone of the Republican Party in Westchester County.

Motivated by greed, patronage, and the pecuniary interest in County jobs and power, the Co-Conspirator Defendants, by inducing and coercing individuals to switch their party affiliations and enlist in the Independence Party, violated constitutional rights, federal, state county laws and criminal laws under the State of New York. If allowed to go unchecked, this Party "raid" will continue to disenfranchise thousands of registered Independence Party voters and others and will succeed in raiding a minor political party and illegally rigging future elections.

## PARTIES

1. Plaintiff THE WESTCHESTER COUNTY INDEPENDENCE PARTY is a Political Party, the third largest Party in New York State, minor party-Row E on the state ballot, located in the County of Westchester, State of New York.

2. Plaintiff RICHARD RHOADES is a Judicial Delegate (an individual) who resides in the County of Westchester, State of New York.

3. Plaintiff IRMA Y. DRACE was a Program Specialist in the Law Department within the Westchester County Attorney's Office and the Treasurer of the Westchester County Independence Party, and District Leader who resides in the County of Westchester, State of New York.

4. Plaintiff DHYALMA N. VAZQUEZ is the Vice-Chair of Westchester County Independence Party, Executive Committee member of New York State Independence Party, County Committee member, District Leader and Judicial Delegate.

5. Plaintiff SAM ZHERKA is a member of the Independence Party, District Leader and resides in the County of Westchester, State of New York.

6. Plaintiff DR. GIULIO A. CAVALLO is the Chairman of The Independence Party and NYS Executive Committee Vice Chairman, Westchester County Judicial Delegate, County Committee Member and District Leader who resides in the County of Westchester, State of New York.

7. Defendant ROBERT P. ASTORINO is the Westchester County Executive, resides in the County of Westchester, State of New York and has an office address at 148 Martine Avenue, White Plains, New York 10601.

8. Defendant ROBERT A. ASTORINO is the father of Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

9. Defendant MORGAN D. ABDELNOUR is employed by the DSS and works under the direct control of and is a close associate of First Deputy Commissioner, Defendant PHILIPPE M. GILLE, residing in the County of Westchester, State of New York.

10. Defendant DOUGLAS F. ABDELNOUR is the father of Defendant MORGAN D. ABDELNOUR and resides in the County of Westchester, State of New York.

11. Defendant ROBERT G. ALBERTY is the Assistant to County Executive II and resides in the County of Westchester, State of New York.

12. Defendant ELISABETH ALBERTY is the spouse of Defendant ROBERT G. ALBERTY and resides in the County of Westchester, State of New York.

13. Defendant CHRISTOPHER R. ARNOLD, a registered Republican, is employed at the Board of Elections as Program Specialist, working for Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

14. Defendant RALPH J. BERARDI, JR., a registered Republican, in the County of Westchester, State of New York.

15. Defendant NICOLINA BOMMARITO, a notary public, is the Program Specialist for the Board of Elections of Westchester County, works for Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

16. Defendant FRANCESCA K. BOSSEY is the Deputy Budget Director for Westchester County, appointed by Defendant ROBERT P. ASTORINO.  She was a member of his 2009 transition team, sits on the Westchester County Advisory Board for Deferred Compensation and resides in the County of Westchester, State of New York.

17. Defendant DANIEL BRANDA, a registered Republican, is Assistant to the County Executive in Westchester County, New York and resides in Orange County, State of New York.

18. Defendant LISA BURKE is Executive Secretary to the County Attorney, Defendant ROBERT MEEHAN and former Secretary to Defendant DOUGLAS COLETY, Republican Party Commissioner for the Board of Elections and Republican Party Chairman.  Upon information and belief, she in the County of Westchester, State of New York.

19. Defendant MARY L. CAPOCCIA is the Election Inspector Coordinator for the Board of Elections, works for Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

20. Defendant NATASHA C. CAPUTO is the Director of Tourism for Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

21. Defendant CHRISTOPHER S. CAPUTO is the spouse of Defendant NATASHA C. CAPUTO and resides in the County of Westchester, State of New York.

22. Defendant THOMAS P. CASPER is married to Deidre Casper and is running for the position of Receiver of Taxes for the Town of Lewisboro, has been endorsed by GOP Lewisboro and resides in the County of Westchester, State of New York.

23. Defendant JAMES F. CASTRO-BLANCO is the Chief Deputy County Attorney at the Westchester County Attorney's Office and resides in the County of Westchester, State of New York.

24. Defendant JOHN A. CERINO is the Confidential Scheduling Secretary to Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

25. Defendant THEODORA CERINO is the mother of Defendant JOHN CERINO and resides in the County of Westchester, State of New York.

26. Defendant SUNNY K. CHACKO is the Supervisor of Fiscal Operations for the DSS, works directly with and for First Deputy Commissioner Defendant PHILIPPE M. GILLE and is the accountant for Defendant DOUGLAS COLETY's Republican Party, residing in the County of Westchester, State of New York.

27. Defendant DOUGLAS A. COLETY is the Chairman of the Republican Party and Republican Board of Elections Commissioner and resides in the County of Westchester, State of New York.

28. Defendant JAMES R. COLEMAN, a registered Republican, is the executive director of the Westchester County Industrial Development Agency, appointed by Defendant ROBERT P. ASTORINO. This Defendant resides in the County of Westchester, State of New York.

29. Defendant KATHARINE WILSON CONROY is an attorney and the daughter of former Governor Malcolm Wilson, with a work address in the County of Westchester, State of New York.

30. Defendant DIANA COSTELLO is the Assistant to County Executive III and resides in the County of Westchester, State of New York.

31. Defendant JOHNNA CULLIGAN is employed as a senior clerk with the Westchester County Board of Elections, works for Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

32. Defendant JOSEPH DALLI is the Deputy Executive Director of Yonkers Paring Authority, a Republican operative and district leader. He resides in the County of Westchester, State of New York.

33. Defendant CARMEN DALLI is the mother of Defendant JOSEPH DALLI, residing in the County of Westchester, State of New York.

34. Defendant NICHOLAS S. DECICCO, is an Assistant County Attorney in the Law Department for Westchester County Attorney, Robert Meehan and resides in the County of Westchester, State of New York.

35. Defendant MARICELLY VELEZ-DELGADO is the Confidential Secretary to the County Executive. This Defendant resides in the County of Westchester, State of New York.

36. Defendant ROBERT DELGADO is the Husband of Defendant MARICELLY DELGADO and resides in the County of Westchester, State of New York.

37. Defendant PETER DELUCIA is the Assistant Commissioner for Westchester County Department of Health, appointed by Defendant ROBERT P. ASTORINO. He is also Councilman in the Town of Lewisboro and resides in the County of Westchester, State of New York.

38. Defendant CHARLES P. DUFFY is the former Supervisor for the Town of Lewisboro, in Westchester, New York and is a Consultant to Defendant ROBERT P. ASTORINO, residing in the County of Westchester, State of New York.

39. Defendant JESSICA R. EGAN is the Administrative Aid to the Westchester County of Executive and resides in the County of Westchester, State of New York.

40. Defendant ANTHONY F. FERRIELLO is the Eligibility Clerk in the Department of Social Services in Westchester, New York, working directly with First Deputy Commissioner, Defendant PHILIPPE GILLE.  He resides in the County of Westchester, State of New York.

41. Defendant JAMES C. FREEMAN, a registered Republican, is an attorney with Kent Hazzard, LLP, located at 111 Church Street White Plains, New York 10601 and resides in the County of Westchester, State of New York.

42. Defendant BRIAN P. FURLONG  is the Eligibility Clerk in the Department of Social Services in Westchester, New York and works directly with First Deputy Commissioner, Defendant PHILIPPE GILLE. He resides in the County of Westchester, State of New York.

43. Defendant MARTIN FINNERAN is a Program Administrator Special Operations with Public Safety for DEFENDANT ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

44. Defendant DAVID B. GELFARB is an elected official, Westchester County Legislator –District 6 and resides in the County of Westchester, State of New York.

45. Defendant GERARD R. GERSHONOWITZ is Program Administrator of Employment and Training, working directly for First Deputy Commissioner, Defendant PHILLIPPE M. GILLE and resides in the County of Westchester, State of New York.

46. Defendant DEBORAH GERACE is the Director of Technical Support Services for the Board of Elections, for Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

47. Defendant PHILIPPE M. GILLE is the First Deputy Commissioner of the DSS, appointed by Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

48. Defendant LEIGH A. GIROUX is an attorney residing in the County of Westchester, State of New York.

49. Defendant STEPHANIE H. GIROUX is a regional investment manager at Wells Fargo Private Banking. She resides with husband Leigh A. Giroux in the County of Westchester, State of New York.

50. Defendant JUDITH HRADSKY resides in the County of Westchester, State of New York and participated in the events leading up to the within action.

51. Defendant LINDSAY ANN JACKSON is the Junior Office Assistant to County Executive, Defendant ROBERT P. ASTORINO, residing in the County of Westchester, State of New York.

52. Defendant JOSEPH D. KENNER is an elected Village Trustee official for the Village of Portchester. He is also an assistant to County Executive IV and resides in the County of Westchester, State of New York.

53. Defendant CHARLES A. KING works for a position supervised by the Securities & Exchange Commission in New York and resides in the County of Westchester, State of New York.

54. Defendant PATRICIA E. LEAVY is the Confidential Secretary to Defendant KEVIN PLUNKETT, Deputy County Executive and resides in the County of Westchester, State of New York.

55. Defendant GERARD LONGARZO, JR. is the Senior Messenger who works directly for First Deputy Commissioner, Defendant PHILLIPPE GILLE, in the Department of Social Services and resides in the County of Westchester, State of New York.

56. Defendant MARY JENNINGS MAHON, ESQ is the Director of Real Estate, appointed by Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

57. Defendant JOSEPH CHARLES MARCHESE III, a registered Republican, resides in the County of Westchester, State of New York.

58. Defendant SHEILA MARCOTTE is the County Legislator 7th Legislative District and as and resides in the County of Westchester, State of New York.

59. Defendant JAMES MAISANO, ESQ is the County Legislator 11th Legislative District and resides in the County of Westchester, State of New York. Defendant JEAN M. MAISANO is the wife of Defendant JAMES MAISANO and resides in the County of Westchester, State of New York.

60. Defendant LUCIANA MASTROGIACOMO is Program Specialist at the Board of Elections, is employed by Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

61. Upon information and belief, Defendant GREGORY G. McBRIDE resides in the County of Westchester, State of New York and participated in the events leading to the within cause of action.

62. Defendant JOHN B. McCAFFREY is the Chief Information Officer for Information Technology, appointed by Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

63. Defendant MATTHEW J. McCARRICK is a Staff Assistant with the DSS and works directly with and for First Deputy Commissioner, Defendant PHILIPPE M. GILLE and resides Orange County, State of New York.

64. Defendant JEANINE P. McCARRICK is the mother of Defendant MATTHEW McCARRICK and resides in the County of Westchester, State of New York.

65. Defendant DIANA McCAUGHEY is a sub-contractor/ campaign worker for Defendant ROBERT  P. ASTORINO. Upon information and belief, this Defendant is a New York City resident and as such, ineligible to register or vote in Westchester County.

66. Defendant FELICIA McCLOSKEY is the sister-in-law of Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

67. Defendant PHILOMENA M. McCLOSKEY is the mother-in-law of Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

68. Defendant EDWIN J. McCORMACK is the Director of Communications for Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

69. Defendant EVELYN M. McCORMACK is the wife of Defendant EDWIN J. McCORMACK and resides in the County of Westchester, State of New York.

70. Defendant ROSEMARY A. McGLAUGHLIN is the New Rochelle City Chairman for the Republican Party, residing in the County of Westchester, State of New York and is the spouse of CHARLES G. McLAUGHLIN, employed at the Board of Elections as Senior Clerk for Republican Commissioner, Defendant DOUGLAS COLETY.

71. Defendant ROBERT F. MEEHAN is the Westchester County Attorney, appointed by Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

72. Defendant EILEEN MARY MILDENBERGER, is the Senior Assistant to County Executive II, appointed by defendant ROBERT ASTORINO and resides in the County of Westchester, State of New York.

73. Defendant AMANDA MODUGNO is the Deputy Director of Tourism for Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

74. Defendant Mr. MODUGNO, is the father of Defendant Amanda Modugno, and resides in the County of Westchester State of New York 10506.

75. Defendant JANICE P. MODUGNO is the mother of Defendant AMANDA MODUGNO and resides in the County of Westchester, State of New York.

76. Defendant MICHAEL ANTHONY MONTELEONE is employed as a senior clerk at the Westchester County Board of Elections, works for defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

77. Defendant WILLIAM M. MOONEY, III is Senior Assistant to the County Executive II and resides in the County of Westchester, State of New York.

78. Defendant KIMBERLY HP MORELLA is a social media marketing consultant, appointed to the Westchester County Advisory Board-Human Rights Commission by Defendant ROBERT ASTORINO and resides in the County of Westchester, State of New York.

79. Defendant KAREN ANN MURPHY is a clerk at the Westchester County Board of Elections for Defendant DOUGLAS COLETY, residing in the County of Westchester, State of New York.

80. Defendant DIANE M. NARDI is Executive Agency Counsel with Manhattan Transit Authority, and resides in the County of Westchester, State of New York.

81. Defendant HENRY C. NEUBECK is the father of Defendant ELISABETH ALBERTY and upon information and belief, resides in a County other than Westchester, despite his using his daughter's Westchester address to register and vote in the Westchester County primary election.

82. Defendant DEBORAH S. OGDEN is a Budget Analyst for Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

14

83. Defendant GEORGE OROS is the Chief Advisor to Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

84. Defendant CHRISTINA A. OROS is the daughter of Defendant GEORGE OROS, placed on the Committee to Receive Notices and resides in the County of Westchester, State of New York.

85. Defendant IRIS THERESA PAGAN is the Director of the Youth Bureau appointed by Defendant ROBERT P. ASTORINIO, residing in the County of Westchester, State of New York.

86. Defendant DANIEL L. PAGANO, upon information and belief, is an attorney duly licensed to practice in the State of New York and resides in the County of Westchester, State of New York.

87. Defendant GUY PARISI, upon information and belief, is an attorney duly admitted to practice law in the State of New York and provides legal services to Defendants ASTORINO and COLETY, as well as other Republicans herein and resides in the County of Westchester, State of New York.

88. Defendant ANTHONY PILLA is a Republican operative for Defendants ROBERT P. ASTORINO and DOUGLAS COLETY and resides in the County of Westchester, State of New York.

89. Defendant KEVIN J. PLUNKETT is the Deputy County Executive, appointed by Defendant ROBERT ASTORINO and resides in the County of Westchester, State of New York.

90. Defendant KATHRYN C. PLUNKETT is the daughter of Defendant KEVIN J. PLUNKETT and resides in the County of Westchester, State of New York.

91. Defendant DAVID P. POLIZZI is an Assistant County Attorney, hired by Defendant ROBERT ASTORINO and resides in the County of Westchester, State of New York.

92. Defendant MICHAEL RECCA works directly for First Deputy Commissioner, PHILIPPE M. GILLE in the DSS in Financial Administration and resides in the County of Westchester, State of New York.

93. Defendant THOMAS M. REDDY is the Chief Investigator with the Ossining Fire Department for which he is the Former Deputy Chief and resides in the County of Westchester, State of New York.

94. Defendant ANDREA C. RENDO is currently running for the 2nd Legislative District and resides in the County of Westchester, State of New York.

95. Defendant VICTORIA ROACH was a former Republican Westchester County Committee Member through April 2012 and resides in the County of Westchester, State of New York.

96. Defendant ADAM RODRIQUEZ is the Senior Assistant County Attorney hired by Deputy County Attorney, Defendant JAMES CASTRO-BLANCO and resides in New York County, City & State of New York.

97. Defendant ELENA FORTUNA ROGLIANO is Junior Staff Assistant to Defendant ROBERT P. ASTORINO and resides in the County of Westchester, State of New York.

98. Defendant ADELAIDE ROGLIANO is the mother of Defendant ELENA FORTUNA ROGLIANO and resides in the County of Westchester, State of New York.

99. Defendant ANTONIO ROGLIANO is the father of Defendant ELENA FORTUNA ROGLIANO and resides in the County of Westchester, State of New York.

100. Upon information and belief, Defendant CHRISTINE ANN RUIS resides in Rockland County, State of New York and participated in the events leading up to the within cause of action.

101. Defendant DONALD B. SCOTT is the Republican Party Chairman in Bedford, New York, running for Bedford Town Supervisor and resides in the County of Westchester, State of New York.

102. Defendant STEPHANIE T. SCOTT is the Assistant Secretary to the County Executive and wife of Defendant Republican Party Chairman in Bedford, New York, residing in the County of Westchester, State of New York.

103. Defendant CHRISTINE A. SCULTI is the Assistant to County Executive And Vice-Chairman of the Republican Party and resides in the County of Westchester, State of New York. Upon information and belief, she is also the girlfriend of Republican Party Chair, Defendant DOUGLAS COLETY.

104. Defendant MARGARET M. SCULTI is the sister-in-law of Defendant CHRISTINE SCULTI and resides in the County of Westchester, State of New York. This Defendant was on the Commission to Receive Notices.

105. Defendant YUZETH M. SMITH is a legal assistant with Progressive Insurance and resides in the County of Westchester, State of New York.

106. Defendant GLEN P. SOLIMINE is Executive Director at J.P. Morgan Treasury Services and Administrative Aide to the County Executive, Defendant ROBERT P. ASTORINO. Upon information and belief, this Defendant is a resident of Massachusetts and ineligible to register or vote in Westchester County.

107. Defendant BERNICE SPRECKMAN is the County Legislator 14th Legislative District and resides in the County of Westchester, State of New York.

108. Defendant ARTHUR R. SULLIVAN, JR. is an Application Support Specialist for the Department of Social Services, works closely with First Deputy Commissioner Defendant

17

PHILLIPPE GILLE in Westchester County, New York and resides in the County of Westchester, State of New York.

109. Defendant JOHN G. TESTA is the County Legislator 1st Legislative District and resides in the County of Westchester, State of New York.

110. Defendant ANTHONY J. TRIPODI resides in the County of Westchester, State of New York.

111. Upon information and belief, Defendant YOLANDA VALENCIA resides in the County of Westchester, State of New York and participated in the events leading to the within cause of action.

112. Defendant YU FLORA WU-BIAGI is an Administrative Aide to the County Executive and resides in the County of Westchester, State of New York.

113. Defendant BRITTA VANDER LINDEN is the Administrative Aid to the County Executive and resides at in the County of Westchester, State of New York.

114. Defendant LUCAS A. VANDER LINDEN is the husband of Defendant BRITTA E. VANDER LINDEN and resides in the County of Westchester, State of New York.

115. Defendant JOHN VERNI is a candidate for County Legislator 7th Legislative District and resides in the County of Westchester, State of New York.

116. Defendant ALBERTO F. VILLATE is a Voting Machine Technician with the Westchester County Board of Elections, employed by Republican Commissioner, Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

117. Upon information and belief, Defendant LESLIE J. WINDSOR resides in the County of Westchester, State of New York and participated in the events leading to the within action.

118. Defendant YU FLORA WU-BIAGI is an Administrative Aide to the County Executive and resides in the County of Westchester, State of New York.

119. Defendant HOLLY C. YOUNG resides in the County of Westchester, State of New York.

120. Defendant EDWARD A. ZEBZDA is a Program Specialist at the Westchester County Board of Elections for Defendant DOUGLAS COLETY and resides in the County of Westchester, State of New York.

## VENUE AND JURISDICTION

121. This court has jurisdiction over all federal claims pursuant to 18 U.S.C. §1965. Furthermore, this Court has supplemental jurisdiction over related causes of action arising under New York State law pursuant to 28 U.S.C §1367 (a). Venue is proper pursuant to 28 U.S.C §1391 (b)(2) since a substantial part of the events or omissions giving rise to the claim occurred in the confines of the Southern District of New York and more specifically, occurred in Westchester County.

## GENERAL ALLEGATIONS AS TO EACH AND EVERY DEFENDANT IN THEIR CONCERTED EFFORTS TO RAID THE INDEPENDENCE PARTY

122. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "121" as if more fully set forth at length herein.

123. At all times herein mentioned, each and every Co-Conspirator Defendant was directly linked in some capacity (i.e. employees, relatives, friends or high-ranking employees in the administration of County Executive ROBERT P. ASTORINO), to the County Executive and numerous Defendants enrolled in the Independence Party, typically at the proverbial midnight hour for the sole purpose of assisting the Candidate for County Executive, Co-Conspirator Defendant ROBERT P. ASTORINO in his plan to "raid" and take over the Independence Party and rig the outcome of its Primary Election.

124. At all times herein mentioned, each and every Co-Conspirator Defendant was part of an organized effort by Candidate for County Executive, Co-Conspirator Defendant ROBERT P. ASTORINO, Defendants and others to change voters' party enrollment to the Independence

Party in order to "decapitate" the current Chair and the Vice Chair, respectively Plaintiffs DR.

GIULIO A, CAVALLO and DHYALMA VAZQUEZ, of the Independence Party.  None of the

Defendants who changed their voters' party enrollment were or are in sympathy with the core

principles of the Independence Party.  Therefore, Defendants' changes to voters' party

enrollment was done in order to take over the Independence Party so as to make it a clone of the

Republican Party in Westchester County.

125. At all times herein mentioned, Defendants and each of them, through their actions or inactions

have committed violations of the following: Election Law §16-110; Election Law §17-104;

Election Law §17-106; Election Law §17-128; Election Law §17-132; Election Law §17-142;

Election Law §17-144; Election Law §17-158; Election Law §17-160; Election Law §17-152.

126. At all times herein mentioned, "ASTORINO" or "COUNTY EXECUTIVE" refers to the

Candidate for County Executive, Co-Conspirator Defendant ROBERT P. ASTORINO.

127. At all times herein mentioned, "DSS" refers to the Westchester County Department of Social

Services, located at 112 East Post Road, White Plains, New York 10601.

128. At all times herein mentioned, "Board of Elections" refers to the Westchester Board of Elections,

located at 25 Quarropas Street, White Plains, New York 10601.

129. At all times herein mentioned, defendant ROBERT P. ASTORINO, the Westchester County

Executive, was elected to said office in 2009. Defendant ASTORINO, with intent to deceive,

organized an illicit, fraudulent scheme to rig the outcome of the September 10, 2013, county-

wide Independence Party primary election by inducing and coercing individuals to switch their

party affiliations and enlist in the Independence Party.

130. As indicated, all of the defendants herein had, in some manner, a connection to or affiliation with

defendant ROBERT P. ASTORINO, through family, friends or associates.

131. Each and every defendant, with intent to deceive, participated in an illicit, organized and fraudulent scheme to rig the outcome of the September 10, 2013, county-wide Independence Party primary election by inducing and coercing individuals to switch their party affiliations and enlist in the Independence Party.

**SPECIFIC ALLGATIONS AS TO THOSE DEFENDANTS WHO "ENROLLED" IN THE INDEPENDENCE PARTY**

132. Plaintiffs repeat and reallege each and every paragraph numbered "1" through "131" as if more fully set forth at length herein.

133. In furtherance of this party raiding scheme, several of the Defendants participated in the rigging of the election by enrolling in the Independence Party at the proverbial midnight hour, just prior the October 12, 2012 deadline and for the sole purpose of raiding the Independence Party in order to insure that their candidate Defendant ROBERT P. ASTORINO would secure the Independence Party Line in the Primary Election.

134. Some examples of persons who enrolled at the "last minute" include but is not limited to MORGAN D. ABDELNOUR, enrolled October 12, 2012, DOUGLAS F. ABDELNOUR – enrolled January 24, 2012, NATASHA C. CAPUTO enrolled October 10, 2012, CHRISTOPHER CAPUTO enrolled October 10, 2012, MARICELLY VELEZ-DELGADO enrolled August 23, 2012, JESSICA EGAN enrolled October 9, 2012, DIANA McCAUGHEY enrolled June 25, 2013, EDWIN McCORMACK enrolled July 5, 2012, EVELYN M. McCORMACK enrolled October 9, 2012, AMANDA MODUGNO enrolled September 26, 2012, ANTHONY M. MODUGNO enrolled on October 10, 2012, JANICE P. MODUGNO enrolled October 10, 2012, WILLIAM M. MOONEY, III enrolled on October 12, 2012, THOMAS M. REDDY enrolled September 28, 2012, VICTORIA ROACH enrolled October 12, 2012.

21

## ALLEGATIONS AS TO NOTARY PUBLICS INVOLVED IN DEFENDANTS' "ENROLLMENT" INTO THE INDEPENDENCE PARTY

135. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "134" as if more fully set forth at length herein.

136. New York State Executive Law Section 135 states in relevant part that "For any misconduct by a notary public in the performance of any of his powers such notary public shall be liable to the parties injured for all damages sustained by them.

137. Upon information and belief, the following 60 defendants are all licensed notary publics in the State of New York: Alberto F. Villate;  Andrea Rendo; Anthony J. Tripodi; Anthony S. Pilla; Britta Elisabeth Vanderlinden; Charles P. Duffy; Christine A. Sculti; Christine Ann Ruis; Christopher R. Arnold; Daniel J. Branda; Daniel L. Pagano; David B. Gelfarb; David Polizzi; Deborah Gerace; Diane M. Nardi; Donald B Scott; Edward A. Zebzda; Eillen Mary Mildenberger; Elena Fortuna Rogliano; Francesca K. Bossey; George Oros ; Gerard R. Gershonowitz; Gregory G. McBride; Holly C. Young; Iris Theresa Pagan; Jaimes Maisano; James C. Freeman; James R. Coleman; John B. McCaffrey; John Cerino ; Johnna Culligan Joseph Charles Marchese III; Joseph D. Kenner; Joseph Dalli; Karen Ann Murphy; Katharine Wilson Conroy; Kimberly HP Morella; Leigh Giroux; Lesley J. Windsor; Lindsay Anne Jackson; Lisa Burke; Lucas A. Vanderlinden; Luciana Mastrogiacomo; Mary Jennings Mahon Mary L. Capoccia; Matthew J. McCarrick; Michael Anthony Monteleone; Michael Recca; Nicholas S. Decicco; Nicolina Bommarito; Peter DeLucia;  Philippe M. Gille; Ralph J. Berardi Jr.; Rosemary G. McLaughlin; Stephanie T. Scott; Sunny K. Chacko; Thomas P. Casper; Yuzeth M. Smith.

138. By notarizing signatures in the absence of any signatory before them; or improperly validating signatories without proper identification; or improperly swearing or affirming said signatories

were who they said they were, or not swearing or affirming in the first instance that said signatories were who they said they were, Defendant notaries have violated their duty as notary publics.

139. Because the notaries knew or reasonably should have known, that they were not properly notarizing signatures, their conduct was careless, negligent and willful, their errors and omissions thereby amounting to notarial misconduct.

140. Plaintiffs relied to their detriment upon the notarizations made by the Notaries.

141. As a result of their fraudulent notarization, an Opportunity to Ballot petition was falsely created and submitted to the WESTCHESTER COUNTY BOARD OF ELECTIONS, resulting in damage to Plaintiffs.

## ALLEGATIONS AGAINST THE COMMISSIONERS OF DEEDS

142. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "141" as if more fully set forth at length herein.

143. The following 4 Defendants, all Commissioners of Deeds, like the Defendant notaries above, certified signatures in the absence of any signatory before them; or improperly validated signatories without proper identification; or improperly swore or affirmed said signatories were who they said they were, or failed to swear or affirm in the first instance that said signatories were who they said they were.  Thus, Defendant Commissioners of Deeds have violated their duties, including but not limited to, (A) JEAN MAISANO(B) GERARD LONGARZO JR.(C) YOLANDA VALENCIA (D) JUDITH HEADSKY.

144. Because the Commissioners of Deeds knew or reasonably should have known that they were not properly certifying signatures, their conduct was careless, negligent and willful, their omissions and errors amounting to misconduct.

145. Plaintiffs relied to their detriment upon the certifications made by the Commissioners.

146. As a result of the Commissioners of Deeds certifications, an Opportunity to Ballot petition was falsely created and submitted to the WESTCHESTER COUNTY BOARD OF ELECTIONS, resulting in damage to plaintiffs.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. The Westchester County Executive

147. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "146" as if more fully set forth at length herein.

148. The Westchester County Executive was and is charged with the duty and responsibility of supervising, directing and controlling the administrative services and departments of the county, appointing and/or removing the heads of every department in the county, as well as employees of his own office, ensuring that county officers, boards, agencies, commission and departments faithfully perform their duties, present to the County Board an annual budget, veto acts of the County Board, and to see that the laws of the state, the acts and resolution of the County Board and duly enacted local laws are executed and enforced within the county. The person holding this office is nominated at a primary election and elected at a general election held the year following the presidential election.

149. In the 2009 elections, the Westchester County Independence Party endorsed ASTORINO for the office of the Westchester County Executive.  During the general election, Astorino received approximately fifty-seven (57) percent of the votes, eight (8) percent of which came from the Independence Party Line.  The Independence Party Line votes became "the margin of his victory" against incumbent Andy Spano.

150. Following his victory against Spano, ASTORINO took office in or about January 2010 and upon information and belief, immediately thereafter, began an elaborate scheme to infiltrate and raid the Independence Party in a bid to rig the outcome of the September 10, 2013, county-wide Independence Party primary elections.

151. In or about March 2013, in a conversation with Plaintiff Zherka, ASTORINO stated that he knew immediately after getting elected in 2009 that he would not be re-endorsed by the Westchester County Independence Party chairman Dr. Giulio Cavallo, and decided on a course of action to "raid" and take over the Independence Party and make it a clone of the Republican Party in Westchester County.

152. This course of action included an illicit and fraudulent scheme designed to induce and/or coerce his family members, County employees directly under his control, close associates, and others easily linked to him into an organized campaign to register new voters and change party affiliation of other voters to the Westchester County Independence Party for the sole purpose of rigging and manipulating the outcome of the Party's primary election.

153. Upon information and belief, in furtherance of this illegal scheme, a substantial number of applications to change party affiliation were filed with the Westchester County Board of Election at the "proverbial midnight hour", on October 12, 2012 the last day on which qualified voters may do so to be eligible to vote in the Independence Party elections the following year.

154. This conspiracy resulted in the unprecedented enrollment of thousands of newly added members into the Westchester County Independence Party, many of who were lifelong members of the Republican Party but *all* with a direct link to ASTORINO or high-ranking members of his administration.

155. In a taped recorded conversation by and between Astorino and a true Independence Party member, Astorino admitted that he and his cohorts essentially raided the Independence Party to "buy insurance" in an attempt to rig and manipulate the outcome of the Independence Primary Election and to "decapitate" duly elected, Independence Party Chairman Giulio Cavallo and Vice Chairperson Dhyalma Vazquez , rendering them politically irrelevant so that no one will ever need their support or endorsement.

**B. The Westchester County Board of Elections Back-dated Numerous Voter Registration Applications to make the applicants eligible to vote in the September 10, 2013 Westchester County wide Primary Elections in Furtherance of the Scheme**

156. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "154" as if more fully set forth at length herein.

157. WESTCHESTER COUNTY BOARD OF ELECTIONS, was and is charged with the duty and responsibility to comply with the Election Law, and the supervision of the conduct of official elections held in Westchester County, including the duties of maintaining permanent voter registration poll, records of registry of voters, the enrollment lists of those eligible to vote in a primary, and the preparation of official Primary Election and General Election ballots for the use in the County of Westchester.

158. Upon application and in accordance with New York State Election Law, any qualified person may apply to register or change party enrollment by mail. All such registration or enrollment must be postmarked by the U.S. Postal Services (hereinafter "U.S.P.S") not later than the twenty-fifth day before the ensuing primary, general or special election and received by the Board of Election no later than the twentieth day before such election.

159. As noted on the Westchester County Board of Election website, all changes in party enrollment go into effect once a year and become effective seven days after the general election. "New

York State has one of the most unforgiving rules in the country when it comes to eligibility to vote in a primary election." Any person unaffiliated with a party or those seeking to change party affiliation to the Independence Party must do so almost an entire year before the actual vote.

160. Therefore, any person who is not a member of a political party or who wishes to change party affiliation and still be eligible to vote in the September 10, 2013, must do so on or before October 12, 2012, twenty-five days before the November 6, 2012 general election.

161. This law and other New York State laws protect Political Parties from being raided at the "last minute" by outsiders who want to rig the primary election process and place their own candidate on an election ballot.

162. Upon information and belief, motivated by fraudulent intent and faced with this statutory deadline, ASTORINO's cronies employed at the Board of Election stamped hundreds of changes in party affiliation to that of the Independence Party on October 12, 2012.

163. A random review of several voter applications to change party affiliation revealed that numerous applications post-marked after the statutory deadline by the USPS were subsequently back-dated to October 12, 2012 by the Board of Elections.

164. Some of the most egregious of these back-dating includes: the application of Susan Heimanson, a resident of Tarrytown, NY post-marked by the U.S.P.S on October 17, 2012 but back-dated to October 12, 2012.

165. The application for Brent Martin, a resident of Somers, NY, signed by Martin on October 16, 2012 and post-marked by the U.S.P.S on October 18, 2012 was back-dated to October 12, 2012.

166. The application for Richard Graap, a resident of Amawalk, NY, signed by Graap on October 10, 2012 and post-marked by the USPS on October 18, 2012, was back-dated to October 12, 2012.

167. The application of Patricia Nugent, a resident of Yonkers, NY, signed by Nugent on October 14, 2012, was back-dated to October 12, 2012.

168. The application of Liza Weiner, a resident of Scarsdale, NY, postmarked by the USPS on October 19, 2012 was back-dated to October 12, 2012.

169. The application of John Rivera, relative of Board of Election employee John Rivera, was signed on October 12, 2012. There is no indication on his application relating to when the Board of Election received his application.

170. In light of above, many of the change in party affiliations purportedly received on October 12, 2012 by the Board of Election are highly suspect.

171. Upon information and belief, the backdating of voter registration cards was a fraudulent and concerted effort by Douglas Colety, the chairman of the Westchester Republican Party and one of two Commissioners of the Board of Election, in violation of his ministerial duties granted to him under the laws of the State of New York and Westchester County Board of Elections.

172. Upon information and belief, this fraudulent and concerted effort was designed to enable ineligible persons to participate in the election process in furtherance of the scheme to rig and manipulate the Independence Primary County wide elections.

173. Upon information and belief, County Employees directly linked to Astorino applied for and received notary public license in furtherance of the Scheme to Raid the Independence Party and to Rig the Westchester County Primary Election.

174. Pursuant to New York State Election Law 6-136 and 6-164, an Opportunity to Ballot Petition must receive signatures from at least five (5) percent of the enrolled voters of a political party in order to write in the name of an undesignated candidate for nomination for election to [a] party position or positions.

175. Any such petition must be signed by the requisite number of voters and must include the date the petition was signed, the name and/or signature of the signer, the signer's residence and the City or Town where the signer resides.  Furthermore, each signature on said Petition must be witnessed by a registered voter residing in New York State or by a notary public.

176. Failure to comply with the provision of Election Law invalidates the petition on its face.

177. To garner the requisite number of signatures necessary to write in an undesignated candidate, upon information and belief, County employees of the County Executive office and those employed by Administrative department directly under ASTORINO's control were asked to apply for Notary Public commissions.  The receipt of Notary Public commission enabled these employees to simultaneously carry petitions as well as witness the signatures of registered Independence Party members who signed those petitions.

178. Upon information and belief, over the course of three years, approximately sixty County employees directly connected to the County Executive and to his co-conspirators were coerced into applying for and receiving notary public commissions.  Almost all of these employees are Republican Party members hoping to secure patronage jobs upon the re-election of ASTORINO.

179. Upon information and belief, in furtherance of the conspiracy, after receiving their notary license, all of said County employees carried petitions and purportedly witnessed the signatures of thousands of registered Independence Party members on the Opportunity to Ballot Petition to write in ASTORINO's name as a candidate for the Westchester County Executive Office primary election to be held on September 10, 2013.

180. Upon information and belief, the Defendants failed to abide by Election Law and Notary Public Law when eliciting signatures from Independence Party Members on the Opportunity to Ballot Petition.

181. Many of the notaries who carried petitions for the County Executive Office, upon information and belief, also simultaneously carried petitions to nominate a candidate for the Westchester Board of County Legislature. Upon information and belief, numerous Independence Party members who signed petition to nominate ASTORINO were told that they were endorsing or supporting the nomination of Sheila Marcott.

182. A canvass of the names listed on the Opportunity to Ballot Petitions notarized by John A. Cerino, the Confidential Secretary to ASTORINO, revealed numerous irregularities. The individuals canvassed were asked whether they personally signed the petition, whether they were sworn in after signing the petition, how long they had been a registered member of the Independence Party, what they were told to sign the petition, who they were supporting and upon a showing of the photograph of Cerino, whether he was present when they signed the petition.

183. While all signers on the Cerino's notarized petitions stated that they personally signed the petition, a number of the individuals stated that they signed the petition because they were under the impression or told by the petition carriers that they were supporting/endorsing Sheila Marcott, representing her district, running for re-election for the Office of Westchester County Board of Legislators and were unaware that they were actually signing a petition to nominate Astorino for the County Executive Office.

184. Upon information and belief, this act of intentional and willful deceit doped Independence Party members into signing a petition to write in the name of a candidate they did not necessarily endorse.

185. Furthermore, upon information and belief, the co-conspirators involved in the fraud who carried petitions to secure signatures misled true Independence voters by fraudulently representing that they were sent by the Independence Party.

186. In addition to the above, some of the Party members who signed the petition did not remember being sworn in, and one individual did not understand English and did not know what she signed.

187. The most disturbing aspect of this fraud upon the electorate, is that, upon visiting the residences of some of the voters who signed the petition, the investigator was told by the owner/occupant at said residences that the individual listed on the petition did not currently live at the stated address and had not resided there for several months (prior to the date stated on the petition).

188. Upon information and belief, in furtherance of the fraud, Cerino notarized signatures on petitions that he was not present to witness. In connection therewith, some of the petition signers recalled being asked to signed the petition for Astorino they stated that a "woman came alone" or that "a woman came along with a young college kid" and that there were no male (Cerino) present when they were sworn.

### C. Registration of Ineligible Voters in the Westchester County Independence Party

189. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "187" as if more fully set forth at length herein.

190. Pursuant to the rules and regulation promulgated by New York State Board of Election, in order to qualify to register to vote in a primary election an individual must be a United States citizen, be eighteen years of age by the date of the primary election, live at their present address at least thirty days before the election, and not claim the right to vote elsewhere.

191. To determine whether a voter is qualified to vote from a particular residence, the voter must manifest the intent to adopt that residence as their permanent and principal home along with their physical presence at the particular residence "without any aura of sham."

192. In order to subvert the rules of the Board of Election, all the co-conspirators registered individuals in the Independence Party who did not meet the requirements to vote in the

31

Westchester County Primary elections.  At the time of their registration, many of these voters were residents of other Counties in New York and/or residents of other States but used a Westchester County address as their primary place of residence.

193. Upon information and belief, in furtherance of the scheme to rig the primary election process, several individuals connected to ASTORINO's family and close associates registered to vote in Westchester County Independence primary election despite having permanent and principal addresses elsewhere.

194. Upon information and belief, all of these individuals knowingly made materially false statement on their application for voter registration, in furtherance of the scheme.

195. Diana McCaughey, daughter of former Lt. Governor Betsy McCaughey, is a newly registered Westchester County Independence Party voter.  McCaughey's application received by the Board of Election on June 25, 2013 listed her address as Mamaroneck, NY.  However, upon information and belief, McCaughey has a permanent and principal residence in New York County from 2002 to present.  McCaughey voted in the September 10, 2013 Westchester County primary elections.

196. Martin J. Finnerman, the boyfriend of Philomenia McCloskey (who is the mother-in-law of County Executive ASTORINO) changed his voter registration from Republican to the Independence Party on October 1, 2012.  He listed McCloskey's address, in Yonkers, NY on his voter registration application; however, upon information and belief, he has a permanent and principal residence in New York County from 1996 to present.

197. Henry C. Neubeck, father of Elizabeth L. Alberty (one of the dis-enrolled member of the Independence Party who served on the Committee to Receive Notices), is a newly registered Westchester County Independence Party voter.  Neubeck's application received by the Board of

Election sometime 2011 listed his address as Cortlandt Manor, NY.  However, upon information and belief, Neubeck has a permanent and principal residence in Merrick, NY from 1990 to present.

198. Members of the Committee to Receive Notices Not Validly Enrolled in the Independence Party.

199. The Westchester County Board of Elections is further charged with receiving and filing petitions, between the statutory hours of 9 a.m. and 5 p.m., for public office and party positions in political subdivisions located in Westchester County, the review and determination of objections and specifications of objections to such designating petitions, notification of a determination of non-compliance and maintaining official maps for all election districts.

200. In addition to the mandatory information required for signers of a petition, an Opportunity to Ballot Petition must appoint and insert the names and addresses of at least three persons, all of whom must be enrolled voters of said political party, as a Committee to Receive Notices.  This committee is an essential element of an opportunity to ballot petition and the failure to have such a committee is a fatal defect.

201. On or about July 18th, 2013, the WESTCHESTER BOARD OF ELECTIONS received, after the statutory deadline of 5 p.m., certain papers, purportedly constituting a petition requesting an opportunity to write in the name of an undesignated candidate for the September 10, 2013 Independence Party Primary Election for the office of Westchester County Executive and other county wide elections.

202. On July 21, 2013, Richard Rhoades, delivered a written complaint to the Chair of the Westchester County Independence Party County Committee with allegations that Defendants EVELYN M. MCCORMACK, ELISABETH L. ALBERTY, CHRISTINA A. OROS, THEODORA M. CERINO, MARGARET M. SCULTI, JAMES F. TRAVALINO, NICOLE

M. DESHENSKY, and other individuals were not in sympathy with the principles of the Independence Party.

203. Richard Rhoades' complaint discussed possible invalid enrollments into the Independence Party.

204. Richard Rhoades, an objector, having duly filed with the Westchester Board of Elections General Objections on July 22, 2013 and on July 29, 2013, Specifications of Objections to a petition for an Opportunity to Ballot petition in the Independence Party Primary for an undesignated candidate for the public office as set forth hereinafter at the primary election to be held on September 10, 2013. Said designation for nomination to be voted for in said Independence Party Primary Election is Westchester County Executive.

205. Specifications of Objections were filed by Richard Rhoades, in support of the Objections to the purported petition and/or cover sheet(s) with the same said BOARD OF ELECTION on July 29th, 2013.

206. On July 29, 2013, Richard Rhoades, served a copy of said Specification of Objections upon the Respondent members of the Committee to Receive Notices.

207. On or about July 29, 2013, Chairman of the Westchester County Independence Party, Dr. Giulio Cavallo, appointed a subcommittee consisting of truly enrolled members of the Independence Party: Dhyalma N. Vazquez, Irma Y. Drace, and Dominica L. O'Neill.

208. Notice of the hearing was sent to Respondents EVELYN M. MCCORMACK, ELISABETH L. ALBERTY, CHRISTINA A. OROS, THEODORA M. CERINO, MARGARET M. SCULTI, JAMES F. TRAVALINO and NICOLE M. DESHENSKY and so other individuals on July 30, 2013 and others, well in advance of the two-day notice requirement.

209. On or about July 31, 2013, an action was brought before the New York State Supreme Court, Appellate Division 2nd Department, when Richard M. Rhoades submitted an Order to Show

Cause to the Court, seeking to declare invalid the Opportunity to Ballot petition for a write-in candidate for the Public Office of Westchester County in the Independence Party Primary Election to be held on September 10, 2013.

210. The subcommittee conducted a duly noticed hearing on August 6, 2013 at 10:00 a.m. at the Royal Regency Hotel located at 165 Tuckahoe Road, Yonkers, NY 10710, the subcommittee convened to hear and make a determination as to whether there existed proper cause to disenroll the Respondents, and others, from the Independence Party.

211. At the hearing, none of the Respondents or others appeared depriving the committee of the ability to examine them.

212. All of the fifty-seven (57) individuals noticed were represented by a single attorney, Daniel Pagano, a known Republican attorney, who appeared and produced the fifty-seven (57) fraudulently notarized form affidavits.

213. All individuals claimed in their form affidavits that they made an independent decision to change their enrollment to the Independence Party.

214. Upon information and belief, a vast majority of the individuals represented by Mr. Pagano are either employed by, neighbors of, or related to the Westchester County Executive, ASTORINO.

215. Based on the evidence presented, the subcommittee determined that all of the Respondents were not in sympathy with the principles of the Independence Party.

216. The subcommittee reviewed and weighed the evidence before it including, enrollment forms, voter registration cards, prior registrations, a recorded conversation in which the Westchester County Executive claimed his intentions to "raid the party" as insurance and to manipulate and rig the outcome of the Independence Party primary election, and a spreadsheet demonstrating

1000s of changes in enrollment to the Independence Party filed with the Respondent Board at the proverbial midnight hour.

217. The subcommittee also heard testimony from Sam Zherka, one of the Plaintiffs herein and a member of the Independence Party who testified that during a meeting with the County Executive on March 1, 2013 and in a telephone call sometime two (2) weeks prior to the hearing, he had an audio taped conversations with the County Executive about efforts to raid the Party and fraudulently rig the outcome of the Independence Party primary election.

218. At the hearing, the subcommittee played the recording of the telephone conversation.

219. Following the hearing, the subcommittee found that Respondents were not in sympathy with the principles of the Independence Party.

220. Most, if not all, of the newly enrolled voters of the Independence Party including the seven Respondents who were career Republicans and in some way affiliated with Astorino, including, but not limited to, being related to the County Executive and/or relatives of high ranking employees in the Astorino administration.

221. Respondent Margaret M. Sculti, a co-conspirator is related to the Assistant County Executive and switched from the Republican Party to the Independence Party on September 23, 2012.

222. Respondent Nicole M. Deshensky, a co-conspirator is related to an employee of the Board of Elections and enrolled in the Independence Party on September 23, 2012.

223. Respondent James F. Travalino, a co-conspirator has been registered with the Independence Party since 2005; however, he is the son of a "big" supporter of the County Executive.

224. Respondent, Evelyn M. McCormack, a co-conspirator and the wife of Ned McCormack – Director of Communications to ASTORINO, changed her registration on October 9, 2012, days before the deadline.  Her registration was stamped by the Board of Election on October 12, 2012.

225. On or about August 6, 2013, in an attempt to prevent the unlawful rigging of the primary election process, Richard Rhoades, and Dr. Giulio Cavallo, submitted a related Order to Show Cause to the Court requesting an Order canceling the enrollment of each of the members of the Committee to Receive Notices on the Opportunity to Ballot Petition and invalidating said Petition in the Independence Party Primary.

226. On August 7, 2013, a trial was held in Supreme Court of the State of New York, Westchester County, Honorable Robert DiBella, and, again not one of the individuals from the Committee to Receive Notices appeared.

227. On August 8, 2013, three of the seven Respondents who were on the Committee to Receive Notices took the stand before the Hon. Robert DiBella - all of whom were disqualified by the Court from the Committee to Receive Notices through in part of their own testimony.  Each was also disenrolled by Judge DiBella from membership in the Independence Party.

228. Co-conspirator, Elisabeth L. Alberty was the first Respondent who appeared and testified that she was a Republican in 2011 and then switched to the Independence Party on August 24, 2012, that she is currently married to Rob Astorino's former staff member and current campaign manager and that she was asked to join the Committee to Receive Notices.

229. Co-conspirator, Christine Oros also took the stand and testified that she is the daughter to the Chief Advisor to the County Executive, Rob Astorino.

230. Respondent Oros changed her enrollment as an unaffiliated voter to the Independence Party on September 23, 2012.

231. Respondent Oros testified that she is in sympathy with the social issues of the Independence Party, such as the right to same sex marriage, or the right to be pro-life on abortion issues, despite the fact, that the Independence party does not take a stance on social issues.

232. Respondent Theodora Cerino, a co-conspirator testified that she is the mother of John Cerino, the Confidential Scheduling Secretary of Rob Astorino.

233. Mrs. Cerino often identified herself as an unaffiliated voter, despite being enrolled within the Independence Party.  Mrs. Cerino switched from the Republican Party to the Independence Party on August 8, 2012.

234. Mrs. Cerino also testified that she was also asked to join the Committee to Receive Notices by her son, John Cerino, the confidential secretary for County Executive ASTORINO.

235. Mrs. Cerino also testified that she never met Dan Pagano who purportedly notarized her signature on the affidavit and that she personally dictated the affidavit that was submitted to the subcommittee, despite the fact that this affidavit was nearly identical to the other 53, or so, affidavits that was submitted to the subcommittee on August 6th, 2013, explaining their failure to appear at the hearing and was confused as to the platform of the party.

236. Respondents McCormack, Sculti, Travalino, and Deshensky did not appear in Court.

237. Therefore, upon information and belief, all Respondent co-conspirators have in one way or another, a close connection the County Executive.

238. On August 12, 2013, a decision and order was entered in the Supreme Court of the State of New York, County of Westchester, finding that the Richard Rhoades application pursuant to Election Law 16-110 for an order cancelling the enrollments in the Independence Party of Respondents MCCORMACK, ALBERTY, OROS, CERINO, SCULTI, and DESHENSKY was granted.

239. Further, the Supreme Court ordered the WESTCHESTER BOARD OF ELECTIONS to cancel the enrollment of MCCORMACK, ALBERTY, OROS, CERINO, SCULTI, and DESHENSKY as members of the Independence Party of Westchester County and that the cross-petition pursuant to Article 78 of the CPLR annulling and vacating the Determination of the

Independence Party that Committee members are not in sympathy with the principles of the

Independence Party be granted as to MCCORMACK, ALBERTY, OROS, CERINO, SCULTI,

and DESHENSKY.

240. Without a valid Committee to Receive Notices all the signatures on the Opportunity to Ballot

Petition for the election of ASTORINO to the office of the County Executive became void ab

initio.

### D. ASTORINO Removed Westchester County Independence Party Chairman Cavallo from the Westchester County Police Board because of Cavallo's decision not to Endorse ASTORINO for the up-coming County Executive Election.

241. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "240"

as if more fully set forth at length herein.

242. In or around December 2010, when it became clear that Cavallo would not be endorsing

ASTORINO for the 2013 County Executive Office, ASTORINO stated that he was going to

"decapitate" Cavallo and render him politically irrelevant.

243. ASTORINO's first act of revenge was to block Cavallo's re-appointment to the Westchester

County Police Advisory Board (hereinafter "The Police Board"), a position Cavallo held for

approximately sixteen years.

244. The Police Board was established to consult and advise the Commissioner/Sheriff or his

designee on matters affecting the Division of the Westchester County Police.   The Police Board

reviews monthly report of the activities of the Division of Westchester County Police and refers

complaints received to the Commissioner/Sheriff for investigation.

245. The Police Board consists of five members, three of whom are appointed by the County

Executive.   After his or her first appointment, each member of the Police Board may be re-

appointed for additional three-year terms.   The members of the board all serve without

compensation but are entitled for reimbursement for actual expenses incurred in performing their duty.

246. Although Cavallo's appointment to the Police Board expired on December 31, 2012, the position remained vacant for approximately nine months.

247. ASTORINO also set his sight on having Cavallo removed as the chairman of the Independence Party. To accomplish this task he asked his political associate, Tom Reddy to organize and co-found the Committee to Clean up the Westchester County Independence Party (hereinafter "the Clean up committee"). Reddy a former Democrat, changed his party affiliation to the Independence Party on September 28, 2012.

248. Upon information and belief, the so-called aim of the clean up committee was to keep the Independence line an open election. This "open election" included the write in of ASTORINO's name on the Independence Party Line ballot in a primary election rigged to guarantee ASTORINO's nomination for the County Executive office.

249. Incidentally, upon information and belief, all the members of the clean up committee (which includes six of the seven members of the Committee to Receive Notices dis-enrolled from the Independence Party by the Court decision) are associated with ASTORINO's fraudulent scheme to rig the primary election and secure the nomination of the Westchester Independence Party Line.

250. On or about August 21, 2013, the clean up committee held a press conference in front of the federal courthouse in White Plains, NY, to call for an end to the "witch hunt that has harassed Independence Party members for several weeks." This "witch hunt" was the formal complaint received by rank-and-file members of the Independence party (all close associates of Astorino's

40

campaign) to determine whether they were in sympathy with the principles of the Independence Party.

251. At this press conference, Reddy, declared himself as the "new chairman of the Westchester County Independence Party."

252. Following the Supreme Court's decision to dis-enroll six of the seven members of the Committee to Receive Notices, a decision that effectively invalidated the Opportunity to Ballot ending ASTORINO's scheme to rig the Independence Party primary election process, ASTORINO finally retaliated against Cavallo by removing Cavallo from the Westchester County Police Board on one days notice.

253. On or about September 23, 2013, the first item on the agenda of Board of Legislators' regular meeting was the County Executive Resolution to appoint Fernando Mateo as a member of the Police Advisory Board for a term to expire December 31, 2015. Mateo's appointment filled the recently vacant position left open by Cavallo.

254. On or about October 2, 2013, after his appointment to the Police Board, Mateo, the President of Hispanics across America, publicly announced his endorsement of ASTORINO for the County Executive Office.

### E. ASTORINO used his Authority to have Vasquez assigned to a "Rubber room" for her part in the Decision to Endorse another Candidate for the County Executive Office

255. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "254" as if more fully set forth at length herein. Dhyalma N. Vasquez (hereinafter "Vasquez"), is an employee of the County of Westchester Department of Social Services (hereinafter "DSS") and has been for more than twenty years.

256. Over the years Vasquez has excelled at her work and was thus continuously promoted. Her most recent promotion was to Grade 14 - Director of Bureau of Case Review, a unit dedicated to minimizing fraud and abuse in the processing of benefit claims.

257. In addition to her employment by the DSS, Vasquez serves as the Vice Chair of the Westchester County Independence Party.

258. In or about November/December 2012, Vasquez opposed a plan originated and supported by Defendants ASTORINO and PHILIPPE GILLE, the First Deputy Commissioner of Social Services, to demote a large number of permanent minority DSS workers at the same time they maintained in employment recently hired white employees who were not permanent civil servants.

259. Vasquez directly confronted GILLE about the proposed plan to replace eligibility examiners with clerks, in addition to hiring political associates, including individuals who worked on ASTORINO's political campaign, while demoting minority workers.

260. Such opposition was not a component of plaintiff's job, but, rather statements made as a citizen and political activist.

261. In addition to her vocal opposition to the demotion of minority workers in favor of white employees politically connected to ASTORINO, by late December 2012, Vasquez made it clear that the Independence Party would not re-endorse ASTORINO for re-election to the County Executive's Office.

262. In an act of coercion to tighten the screws on Vasquez and try to change her mind, ASTORINO misused his authority as County Executive and had her transferred to a non-existent position.

263. ASTORINO expressly acknowledged his intent to "decapitate" Vasquez for her refusal to support his candidacy for re-election.

264. In a recorded conversation, ASTORINO told Zherka that he thought Vasquez did not qualify for the position she held because she did not have a college degree and stated that she was transferred to a position more suitable to her educational background despite the fact that she had worked her way up through the system over a twenty year period of time.

265. At the end of December 2012 and for no other articulated reason, the Commissioner of DSS, Kevin McGuire, issued a broadly publicized directive, transferring Vasquez to another position "to coordinate the establishment of front end detection sub-units in each of our District offices."

266. When Vasquez complained that she was being consigned to what amounted to a "rubber room" and not afforded any professional opportunities, her supervisor acknowledged that she had been directed by the highest levels of DSS to give Vasquez menial assignments, suitable for a grade 4, not a grade 14, employee.

267. Upon information and belief, Defendants' retaliation against Vasquez has continued to this day. Since September 17, 2013, Vasquez has been locked her out of her office preventing her from performing any job functions and maliciously punishing her for her ongoing opposition to racial/national origin discrimination by the County toward minority DSS workers and the Independence Party's opposition to the re-election of ASTORINO as County Executive.

268. Irma Drace's Position at the Office of the County Attorney was terminated because of her Affiliation with the Westchester County Independence Party.

269. Irma Y. Drace, was employed by the Westchester County Attorney's Office in the position of Program Specialist (Law) since May 10, 2010.

270. Drace is also the Treasurer and District Leader of the Westchester County Independence Party.

271. In a letter signed by Robert Meehan and dated September 3, 2013, Drace was informed that her provisional position with the Office of the County Attorney was being terminated effective September 19, 2013.

272. The official reason for Drace's termination was her failure to pass the civil service exam; this official reason was only a pretext for ASTORINO's retaliation against Drace for her role in the sub-committee hearing held to dis-enrolled thousands of newly added voters to the Independence Party.

273. In or about April 2013, Drace was told to appear for the civil service examination in relation to her provisional position with the County Attorney's office. On the day of the exam, Drace was told by James F. Castro-Blanco, a Republican member and Deputy County Attorney appointed by ASTORINO, in the presence of witnesses, that she did not need to take the exam and that all she was required to do was sign her name on the exam and leave. Drace followed the Castro-Blanco's directive, signed her name to the exam before leaving the examination room.

274. In or about June 2013, a civil service list was published with the names of all the examinees that took and passed the civil service exam for their respective appointments.

275. Any examinee who failed or did not score high enough on the exam was subsequently removed from the position they held. Examinees with political connections that failed or did not score high enough on the civil service exam were offered other position through-out the DSS District Offices.

276. Upon information and belief, in or about April 2013, Rosemary M. Jarosz, took and failed her eligibility clerk exam. Her position was terminated but she was appointed to a new position as community outreach worker. Jarosz is a Republican operative with close connection to GILLE and ASTORINO.

277. Upon information and belief, in or about April 2013, Kelly Murray took and failed her eligibility clerk exam. Her position was terminated but she was also appointed to a new position as a community outreach worker. Murray is a Republican operative with close connection to GILLE.

278. Upon information and belief, in or about April 2013, Tracy Traverson took and failed her eligibility clerk exam. Her position was terminated but she was also appointed to a new position as a community outreach worker. Traverson is a Republican operative with close connection to GILLE.

279. Upon information and belief, in or about April 2013, Jennifer Finley took and failed her eligibility clerk exam. Her position was terminated but she was also appointed to a new position as a community outreach worker. Finley is a Republican operative with close connection to GILLE.

280. In or about April 2013, Drace "took" and failed her eligibility clerk exam. Her position terminated and she was not appointed to a new position. Drace is politically connected to the Independence Party and participated in the hearing to dis-enrolled thousands of newly added voters to the Independence Party in an attempt to thwart the raiding of the Independence Party and the subsequent rigging of the primary elections.

281. Upon information and belief, Drace's termination was in direct retaliation for her role as one of the three sub-committee members who heard evidence and found that the members of the Committee to Receive Notices for the Opportunity to Ballot Petition, in addition to others, were not in sympathy with the principles of the Independence Party thus preventing ASTORINO from benefitting from his fraudulent scheme to become the Independence Party nominate for the Westchester County Executive Office.

282. Other Elected Officials who acted in concert with ASTORINO Benefitted from His Attempt to Raid the Westchester County Independence Party.

283. Upon information and belief, the fraudulent election-rigging scheme allowed thousands of raiders to vote against the endorsed candidate of the Independence Party. The illicit scheme to raid of the Independence party opened the party up to persons not in sympathy with the core principles of the party's platform, disenfranchising the true Independence Party voters who were forced to adulterate their candidate selection process because of the rigging of the primary election process.

284. Upon information and belief , all the raiders of the Independence Party had a single aim in mind: to manipulate and rig the outcome of the primary election in favor of the co-conspirators.

285. Sheila Marcot, James Maisano, Bernice Spreckman, John Testa and John Verni, all co-conspirators in the scheme to raid the Independence Party, were direct beneficiaries of the rigged Independence Party primary election.

286. The illegalities surrounding the primary election undermined the integrity of the vote rendering it virtually impossible to determine the real results of the primary elections because true Independence Party voters' due process rights were violated when they were outnumbered by the overwhelming majority of raiders that voted in the Westchester County wide Independence Party primary elections.

### F. The Co-conspirators Violated Numerous Provisions of New York State Election Law in the Fraudulent Scheme to Rig the Independence Party Primary Elections.

287. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "286" as if more fully set forth at length herein.

288. All the co-conspirator petition carriers who registered or attempted to register an elector while knowing that said elector was not qualified to vote in the District of the registration violated Section 17-104(2) of New York State Election Law.

289. All co-conspirators who knowingly gave false residence within the election district when registering as an elector violated section 17-104(4).

290. All co-conspirators who permitted, aided, assisted, abetted, commanded or advised another to commit any of the preceding acts is guilty of a felony pursuant to section 17-104(5) of the New York State Election Law, crimes under the laws of the State of New York.

291. All co-conspirators, especially those employed by the Westchester County Board of Elections and those who carried petitions for ASTORINO, is guilty of fraud in the execution of the duties of his office as an election officer and is guilty of a felony pursuant to section 17-106 of the New York State Election Law.

292. All co-conspirators who gave, offered or promised to procure any office or employment to or for any voter, or for any other person, in order to induce such voter to sign a petition for the opportunity ballot at a primary election violates section 17-122(2) of the New York State Election Law.

293. All co-conspirators who received any moneys, loans, gifts, or other valuable consideration or employment for himself or for others for signing a petition for the opportunity ballot at a primary election violates section 17-122(3) of the New York State Election Law.

294. All co-conspirators who are notaries or commissioner of deeds or subscribing witness to a petition for the opportunity ballot at a primary election who made a false statement or false affidavit on such petition violates section 17-122(7) of the New York State Election Law.

295. All co-conspirators who violated of section 17-122 of the New York State Election Law are guilty of a misdemeanor.

296. All co-conspirators who directly, indirectly, by themselves or through others, give, offers, or promises any office, place or employment or any other valuable thing as inducement for any voter or other person to procure either a large or small vote at any election district for a candidate violates section 17-142 of the New York State Election Law.  Violators of this section of the election law shall be guilty of felony.

297. All co-conspirators who directly, indirectly, by themselves or through others, received before, during or after any election any money, gift, loan or other valuable consideration for any voting or agreeing to vote for any particular person at an election violates section 17-144 of the New York State Election Law.  Violators of this section of the election law shall be guilty of felony.

298. All co-conspirators who to promote the election of any person to public office by any unlawful means and which conspiracy was acted upon by one or more parties thereto violates section 17-152 of the New York State Election Law. Violators of this section of the election law shall be guilty of felony.

299. All co-conspirator who while holding public office or who were seeking nomination to such public office, corruptly used or promise to use his/her position or authority in the election process violates section 17-158 of the New York State Election Law. Any individual who violates of this section is guilty of a felony.

### CLAIMS FOR RELIEF
### (EIGHT CLAIMS FOR RELIEF)

### FIRST CLAIM FOR RELIEF:
### VIOLATION OF 18 U.S.C. 1962(B) §1962(C) –
### CONDUCTING THE AFFAIRS OF THE ENTERPRISE THROUGH A
### PATTERN OF RACKETEERING ACTIVITY ("RICO")
### (Against All Co-Conspirator Defendants)

300. The Co-Conspirator Defendants are each a liable "person" within the meaning of §1961(3) and 1962(c) of RICO.

301. The Co-Conspirator Defendants committed at least two predicate acts of "racketeering activity" as that term is defined in 18 U.S.C. §1961(1). The predicate acts include among other things, mail fraud in violation of 18 U.S.C. §1341, and wire fraud in violation of 18 U.S.C. §1343.

302. The predicate acts of racketeering activity committed by the Co-Conspirator Defendants constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

303. Each Co-Conspirator Defendant directly or indirectly participated in the conduct of an "enterprise" as that term is defined in 18 U.S.C. §1961(4).

304. The activities of the "enterprise" affected interstate commerce. The Co-Conspirators Defendants conducted their enterprise through an ongoing, open ended pattern of racketeering activity for more than 2 years.

305. The above described racketeering activities amount to a common course of conduct intended to deceive and harm the Plaintiffs. Each racketeering activity is related and has similar purposes, involves the same or similar participants and methods of commission, and has similar victims, Plaintiff Independence Party and its members.

306. Each Co-Conspirator Defendants' conduct furthered the affairs of the enterprise because they participated in the enterprise.

307. Plaintiffs have been and continue to be injured by the Co-Conspirator Defendants' violations.

308. Plaintiffs' injuries are directly and proximately caused by the Co-Conspirator Defendants racketeering activity as described above.

309. Plaintiffs requests that all correspondence, emails, phone calls, text messages be turned over as matters that were in furtherance and as a result of their racketeering activity.

310. By virtue of their violations of 18 U.S.C. §1962(c), the Co-Conspirator Defendants are jointly and severally liable to the Plaintiffs for three times the damages Plaintiffs have sustained, punitive damages, and the cost of this lawsuit, including reasonable attorneys fees.

### A. MAIL FRAUD – VIOLATION of 18 U.S.C. §1341

311. The Co-Conspirators willfully and knowingly devised a scheme or artifice to defraud the election to secure their candidates in political salaried positions by means of false pretenses, and representations in that they joined the Independence Party knowing that they were NOT in sympathy with the principles, ideals and values of the Independence Party and they used the United States Postal Service by mailing or by causing to be mailed, the voter registration cards, registering as members of the Independence Party, a Party they only recently joined after being lifelong members of other political parties.

312. Said scheme has been ongoing since the year 2010 when calls, emails and meetings and other evidence of the meeting of the minds on this scheme, began.  Indeed, said initiative, continues to this present day.  This bogus enrollment and attempted seizure of party machinery for the purpose of advancing the fortunes of another political party should not be tolerated.

### B. WIRE FRAUD – VIOLATION of 18 U.S.C. §1343

313. The Co-Conspirator Defendants willfully and knowingly devised a scheme to take over the independence Party to secure positions for their cronies and associates in paid political positions. The Co-Conspirator Defendants made interstate telephone calls or other communications whereby the scheme was discussed and planned for the purpose of illegally raiding the Independence Party and ensuring the election of their own mostly Republican candidates and cronies.  If a person is not in reality in sympathy with the principles of a party he is not entitled to enroll in order to further his/her ulterior motives pursuant to New York State Election Law.

## SECOND CLAIM FOR RELIEF:

### COMMON LAW FRAUD & DECEIT
### (Against All Co-Conspirator Defendants)

314. The acts and conduct described above constitute common law fraud and deceit.

315. Each Co-Conspirator joined the independence party with knowledge that they were not in sympathy with the principles, ideals and/or values of the Independence party but for the sole reason to take the party over by force thereby attempting to secure the election of their Co-Conspirator candidates who do not represent the true value of the Independence Party.

316. As a result of the Co-Conspirator Defendants candidates that are not in sympathy with the Independence Party were able to secure and win the Independence Party Primary election.

317. The Co-Conspirator Defendant's right to enroll in a political party is not absolute.  A condition of membership in a political party is being in sympathy with its principles and the purpose of fostering and effectuating them.

318. As a result of the Defendant's fraud and deceit Plaintiffs have been damaged.

## THIRD CLAIM FOR RELIEF:

### CIVIL CONSPIRACY
### (Against All Co-Conspirator Defendants)

319. The numerous Co-Conspirator Defendants engaged in a civil conspiracy to injure the Plaintiffs, including but not limited to Dr. Giulio Cavallo and DhylmaVazquez, by engaging in the tortious and unlawful acts described in this Complaint.

320. The Co-Conspirator Defendants numbering more than two got together to do an unlawful act, to raid the Independence Party, and even did a lawful act of getting  themselves elected or ensuring they could get elected by engaging in the unlawful act of registering persons that were NOT in sympathy to the Independence Party.  At the heart of this salacious conspiracy scheme was the

intent to raid the party and disenfranchise Plaintiffs and other members of the Independence

party by rigging the election.  Co-Conspirator Defendants planned to secure a political seat for

their candidates that are NOT in sympathy with the principles of the Independence Party thereby

ensuring that the lucrative jobs and political power stay vested in their Party while under the

false pretense that they are in sympathy with a political party they really hate.

321. The facts herein are clear that Co-Conspirator Defendants in 2010, started the scheme to raid the

Independence Party to rig the outcome of the primary election process.  The plot included but

was not limited to,  registering their family members, friends and colleagues in the Independence

Party via voter registration forms mailed to the Board of Elections; actively secured signatures

from unsuspecting true Independence Party members on their false petitions and the like.

322. As a result of this civil conspiracy by the Co-Conspirator Defendants, Plaintiffs have been

damaged for which the Co-Conspirators are jointly and severally liable.

## FOURTH CLAIM FOR RELIEF:

**Violation of the First and Fourteenth Amendments to the United States Constitution and
18 USC 1983
(Against Co-Conspirator Defendants Board of Elections & Douglas Colety)**

323. Co-Conspirators, the Board of Elections and Douglas Colety participated in the violation of the

First and Fourteenth Amendment by accepting, after the statutory deadline of 5 p.m., certain

papers of other Co-Conspirators which included an Opportunity to Ballot Petition of Robert

Astorino requesting an opportunity to write in his name as a candidate for the September 10,

2013 Independence Party Primary Election for the office of Westchester County Executive.

324. The Board of Election deadline was at 5:00 p.m. on the day in question and Co-Conspirator

Defendant Board of Elections and Douglas Colety had no authority to extend the time within

which the Co-Conspirators were allowed to file their papers.  Such action establishes the bad

intent of the said Co-Conspirators to further the illegal scheme to disenfranchise Independence Party members by illegally assisting Robert Astorino and others to be on the Independence Ballot for the September primary election. While said scheme was foiled by the Supreme Court and the Appellate Division Second Department when they ruled the petition was defective, said actions establish the Co-Conspirators participation in the illegal scheme in violation of the rights of other registered voters.

325. Additionally, Republican Board of Election employees carried petitions in furtherance of the scheme and notarized signatures on petitions they knew or should have known were part of a fraud.

## FIFTH CLAIM FOR RELIEF:

### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Against All Co-Conspirator Defendants including Marcott, Maisano, Testae, Verni, Spreckman and Board of Elections)
### A.  Scheme of Registering Persons NOT in Sympathy to the Principles of the Independence Party

326. Co-Conspirator Defendants engaged in a scheme to register over 4,000 persons to the Independence Party in an effort to raid the Independence Party and rig the election by ensuring that their cronies got elected to lucrative jobs and positions of power within the County.

327. This act constitutes a  violation of the 14th Amendment Equal Protection Law by the defendants and defeats the Plaintiff's First Amendment right of association for the advancement of political beliefs and the right to cast the Plaintiff's vote effectively.

328. Co-Conspirator Defendants further violated the 14th Amendment's Substantive Due Process Clause as this election scheme by the Defendants - actively registering persons of opposite party affiliation (Republicans and Democrats) to the Independence Party - was and is discriminatory

against the other voters including the Plaintiffs and shocks the conscience. The conduct was so fundamentally unfair that it undermined the integrity of the vote.

329. The Plaintiff's asks that this Honorable Court enforce a fair and equal nomination system to all candidates be imposed for all future elections. The Plaintiffs have a 14th Amendment Due Process Property Interest Right to a fair nomination process and election in this Westchester County and the State of New York which was violated by the Co-Conspirator Defendants as per this Claim.

**B. Scheme of Back Dating Voter Registration Forms Making Co-Conspirators Eligible to Vote**

330. The Board of Elections, as reflected in documents, back dated voter registration forms of other Co-Conspirator Defendants which gave these persons the ability to vote in the Independence Party's Primary Election thereby providing the illegal platform from which these Co-Conspirator Defendants were able to stand on to win the nomination of the Independence Party despite the fact that they were NOT in sympathy with the principles of the Independence Party.

331. The Co-Conspirator Defendants created this governmental scheme which disadvantaged the others in the election County and State including the Plaintiffs.

332. This act constitutes a violation of the Plaintiff's U.S. Constitution's 14th Amendment Equal Protection Rights and defeats the Plaintiff's First Amendment right of association for the advancement of political beliefs and the right to cast the Plaintiffs vote effectively. This salacious scheme deliberately violates the one man, one vote principle of Equal Protection Clause of the 14th Amendment.

333. This act also constitutes a violation of the 14th Amendments Substantive Due Process Clause as this scheme by the Co-Conspirator Defendants is discriminatory against other voters including the Plaintiffs and shocks the conscience. This also constitutes a 14th Amendment Violation of

Due Process Rights to Property. The Plaintiffs have a property interest right in fair and equal election procedures in the County elections.

334. The Plaintiff's further asks this Honorable Court to mandate that the Co-Conspirator Defendants be directed not to alter forms that come into their possession.

### SIXTH CLAIM OF RELIEF:

### VIOLATION OF THE HATCH ACT
### (Against Co-Conspirator County Employee Defendants)

335. State and local employees are prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office, coercing attempting to coerce commanding or advising a State or local officer or employee to pay, lend or contribute anything of value to a party, committee, organization, agency, or person for political purposes.

336. Co-Conspirator Defendant employees of the County engaged in political activity during work hours at their respective offices within the County Offices in Westchester County using their official authority and influence for the purpose of illegally interfering with and affecting the result of the election of the County Executive and other Countywide positions.

337. Based upon information and belief, the Co-Conspirators engaged in political speech and political activities during work hours either by having direct conversations with one another about the scheme to raid/take over the Independence Party and/or conversations over the telephone and via emails about their illicit plan to interfere and affect the upcoming election.

338. As a result of the foregoing acts of the Co-Conspirator Defendants the Plaintiffs have suffered damages.

## SEVENTH CLAIM OF RELIEF:

### BREACH OF FIDUCIARY DUTY
### (Against Co-Conspirator Defendant Board of Elections and Colety)

339. The Board of Elections has a duty to ensure that all residents have an opportunity to vote and that, that process is done legally and effectively.

340. The Board of Elections and Defendant Colety breached their fiduciary duty when they allowed the Co-Conspirator Defendants to file petitions late after hours.

341. Based upon documentary proof the Board of Elections back dated Voter Registration Filings to allow said other Co-Conspirator Defendants to vote in the primary election.

342. Other employees at the Board of Elections engaged in the scheme when they secured their notary status and then carried petitions and got signatures and participated in switching the voter registration of their family members i.e. Nicole Deshensky a relative of an employees.

343. As a result of the foregoing acts of the Co-Conspirator Defendants the Plaintiffs have suffered damages.

## EIGHTH CLAIM FOR RELIEF:

### BREACH OF FIDUCIARY DUTY
### (Against Co-Conspirator Defendants Pagano and Parisi)

344. Defendants, attorneys Pagano and Parisi, breached their fiduciary responsibility as officers of the Court.

345. Co-Conspirators Pagano and Parisi as officers of the Court owed a fiduciary duty which involved the integrity and fidelity to the principles of truth and honesty to the Court.

346. Pagano and Parisi breached this fiduciary duty.

347. Counselor Pagano actively participated in registering and delivering voter registration forms of persons he caused to switch his own family, friends and associates. Indeed, recently in the month of August 2013 many of which he notarized without even meeting the people who he notarized.

348. He falsely notarized the affidavits of persons and said notarization was false because in at least two instances witnesses testified that they did not know who he was and that they had not had him notarize their affidavits.

349. Parisi with Co-Conspirator Phillip Gille (Deputy Commissioner of Social Services for the County) hand delivered signed petitions of his cohorts, switched and converted his own family and friends and delivered those ill intended petitions to the Board of Elections nearly five (5) hours after the Board of Elections should have been closed.

350. As a result of the Co-Conspirator Defendants breach, the Plaintiffs have suffered damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment:

A. Plaintiffs prays of judgment against the Co-Conspirator Defendants for actual damages in an amount in excess of $1,000,000; and

B. Plaintiffs prays of judgment against the Co-Conspirator Defendants for treble damages for the violations of RICO, punitive damages in an amount in excess of $100,000,000;

C. Awarding plaintiffs all reasonable attorneys' fees and costs arising from their prosecution of this matter, and

D. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,


_____
SAM ZHERKA, PLAINTIFF PRO SE
240 North Ave. Suite 212
New Rochelle, New York  10606


_____
PETER TILEM, ESQ.
TILEM & CAMPBELL, P.C.
Attorneys for The Westchester County Independence Party,
Dr. Giulio Cavallo, Irma Y. Drace, Richard Rhoades,
Dhyalma N. Vazquez
188 East Post Road
White Plains, New York 10601